UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

AMBAR LUNA REYES,

Defendant.
-------------------------------------------------------X

**OPINION AND ORDER**

25-CR-00036 (PMH)

PHILIP M. HALPERN, United States District Judge:

On May 20, 2026, Defendant Ambar Luna Reyes, filed a motion for compassionate release ("Motion") pursuant to 18 U.S.C. § 3582(c)(1)(A) on the grounds that her status as the sole caregiver for her elderly, incapacitated parents constitutes an extraordinary and compelling reason for a reduction in her sentence. (Doc. 27 at 3)..[1] On May 21, 2026, the Court directed the Government to file a response to the Motion. (Doc. 28). The Government submitted its response to the Motion on June 18, 2026. (Doc. 32). On June 29, 2026, Defendant submitted a supplemental letter in support of her Motion. (Doc. 33). On July 16, 2026, Defendant filed a letter advising the Court that she withdrew her appeal of her sentence pending before the United States Court of Appeals for the Second Circuit, and she submitted a medical record under seal concerning her father. (Doc. 34). On July 16, 2026, the Second Circuit granted Defendant's motion to withdraw her appeal. (Doc. 35).

For the reasons set forth below, the Court concludes that Defendant has failed to establish the existence of extraordinary and compelling reasons to warrant a sentence reduction, and consideration of the factors set forth in 18 U.S.C. § 3553(a) does not warrant the relief requested. Accordingly, the Motion is DENIED.

[1] Citations to the parties' submissions correspond to the pagination generated by ECF.

## **BACKGROUND**[2]

The United States Small Business Association (the "SBA") is a federal agency that administers assistance to small businesses, including by guaranteeing loans that are issued by certain lenders to qualifying small businesses. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law designed to provide emergency financial assistance to the millions of Americans who suffered the economic effects caused by the COVID-19 pandemic. The CARES Act authorized forgivable loans to small businesses for job retention and certain other expenses through the Paycheck Protection Program (the "PPP").

The PPP allowed qualifying small businesses to receive unsecured SBA-guaranteed loans. The PPP loan proceeds were required to be used by businesses on payroll costs, mortgage interest, rent, and/or utilities. Pursuant to the CARES Act, the amount of PPP funds a business was eligible to receive was determined by the number of employees employed by the business and its average payroll costs. Businesses applying for a PPP loan were required to provide documentation to confirm that they previously paid employees the compensation represented in the loan application.

The CARES Act also expanded the Economic Injury Disaster Loan ("EIDL") Program which provided small businesses with low-interest loans to help overcome the temporary loss of revenue due to COVID-19. To qualify for an EIDL under the CARES Act, the applicant must have suffered substantial economic injury from COVID-19. EIDLs could be used for payroll and other costs. The CARES Act also permitted applicants seeking a loan under the EIDL program to request an advance of $1,000 per employee, for an amount up to $10,000, which the SBA generally

---

[2] The Court draws the background facts principally from the Presentence Investigation Report, revised July 31, 2025, prepared in this case in connection with Defendant's sentencing ("PSR"), and the sentencing transcript. (Doc. 17, "Sent. Tr.").

provided while the loan application was pending, so long as the application contained a self-certification under penalty of perjury of the applicant's eligibility for an EIDL.

In April 2020 and May 2020, Defendant submitted fraudulent applications for PPP and EIDL funds on behalf of two companies that she owned and purportedly operated, namely, RLUNA Enterprises, Inc. ("RLUNA") and NYOLL Models, Inc. ("NYOLL"). The applications Defendant submitted to the SBA contained false information, including information about the companies' payroll and revenue figures. The applications also relied on tax documents that reflected false information and were never filed with the appropriate tax authorities. Based on these false representations and documentation, Defendant sought to obtain more than $675,000 in PPP and EIDL funds for RLUNA and NYOLL. Defendant ultimately received $567,261 in funds based on the fraudulent applications. Specifically, on May 18, 2020, a PPP loan in the amount of $561,261 was deposited in a bank account for RLUNA. On June 15, 2020, an EIDL advance of $6,000 was deposited into the RLUNA bank account.

Defendant used a significant portion of these fraudulently obtained funds for illegal expenditures that were inconsistent with the PPP and EIDL requirements. Defendant's impermissible use of the SBA funds included: (1) withdrawing approximately $90,000 in cash; (2) purchasing approximately $75,000 of real estate in the Dominican Republic; (3) paying approximately $45,000 to individuals who were never employed by RLUNA; and (4) using approximately $10,000 for items she characterized as "personal expenses" or "family support."

On January 23, 2025, Defendant pled guilty to Count One of the Information charging her with Wire Fraud Affecting a Financial Institution, in violation of 18 U.S.C. §§ 1343 and 2. On September 9, 2025, Defendant appeared before this Court for sentencing. Defendant's Sentencing Guidelines Range was calculated at 21 to 27 months' imprisonment.

Defendant argued that her background, the circumstances of the crime, her participation in mental health treatment, and her role as the primary caregiver to her mother and father warranted a downward variance, a non-custodial sentence of home detention. (Sent. Tr. at 13-17). Defendant's mother, in her letter to the Court, explained that she and her husband were "totally dependent" on Defendant. (*See* Doc. 8, Ex. B). Defendant, in her letter to the Court, explained that her parents refused help from other individuals and entrusted her as their main caregiver. (*See* Doc. 8, Ex. E).

After addressing the nature and circumstances of the offense, and the history and characteristics of Defendant, including her significant family ties and responsibilities, the Court sentenced Defendant to a below-Guidelines term of eighteen months of imprisonment, to be followed by a term of three years of supervised release. (Sent. Tr. at 19-26). Defendant's projected release date from her current residential reentry residence is February 19, 2027. Federal Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc (last visited November 5, 2026).

At the sentencing hearing, the Court granted Defendant's request for a surrender date in ninety days, or until December 8, 2025, in part due to the health condition of Defendant's father. (Sent. Tr. at 31). On November 25, 2025, Defendant filed a letter under seal, accompanied by a letter from Defendant's father's physician, requesting an eight-week adjournment of Defendant's surrender date. The letters explained that Defendant's father was diagnosed with Stage 2 bladder cancer and he was scheduled for surgery on December 30, 2025. Following the surgery, he required postoperative care for approximately eight weeks.[3] The Court granted Defendant's request for a

[3] This Opinion includes pertinent details of Defendant's parents' medical conditions that form the basis for her Motion. The majority of these details are in the public record and summarized in Defendant's Motion. (*See* Doc. 27). The medical record submitted by Defendant remains under seal, but the Court references relevant details for the purposes of this Opinion. The Court has determined that the presumption of access to the courts overcomes any privacy interest, which is also waived because Defendant discusses the medical

new surrender date of February 24, 2026, which was later extended to February 25, 2026. (Doc. 21).

On February 25, 2026, Defendant began serving her sentence at FCI Danbury. Defendant represents that a request for compassionate release was submitted to the warden of FCI Danbury on her behalf. (Doc. 27 at 4)..[4] After exhausting her administrative remedies, on May 20, 2026, less than three months after the commencement of her sentence, Defendant filed the Motion seeking compassionate release and a reduction in her sentence to time served or, in the alternative, imposing more restrictive conditions of supervised release for the balance of her sentence. (*Id.* at 3).

**STANDARD OF REVIEW**

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011)..[5] Compassionate release is one of the limited exceptions enumerated in 18 U.S.C. § 3582(c). Under the First Step Act, "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal [or] a failure of the [BOP] to bring a motion on the defendant's behalf," a court may reduce a defendant's sentence, on a defendant's motion, if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

---

conditions in detail in her publicly filed Motion. *See United States v. Ebbers*, 432 F. Supp. 3d 421, 423 (S.D.N.Y. 2020).

[4] The Government confirms that it does not oppose the Motion on exhaustion grounds. (Doc. 32 at 5).

[5] Unless otherwise noted, all case quotations omit internal quotation marks, citations, alterations, and footnotes.

"The moving party bears the burden of proving that extraordinary and compelling reasons exist." *United States v. Rodriguez*, No. 19-CR-00012, 2020 WL 2787629, at *3 (S.D.N.Y. May 28, 2020).

"District courts may consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them." *United States v. Fernandez*, 104 F.4th 420, 427 (2d Cir. 2024) (citing *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020)), *cert. granted in part*, 145 S. Ct. 2731 (2025), *aff'd*, 146 S. Ct. 1292 (2026). As the Second Circuit has held, "an extraordinary reason is most unusual, far from common," and has "little or no precedent," or is "beyond or out of the common order, remarkable, and synonymous with singular." *Id.* at 428. Meanwhile, "[a] compelling reason is both powerful and convincing." *Id.*

"[T]he existence *vel non* of extraordinary and compelling reasons determines only whether a defendant can be considered for release—the existence of such reasons does not mandate release." *Ebbers*, 432 F. Supp. 3d at 430 (S.D.N.Y. 2020). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

The statutory scheme thus requires first that a court determine that a defendant has exhausted her administrative remedies, that extraordinary and compelling reasons exist for a reduction in sentence, and that such reduction is consistent with the applicable policy statements issued by the Sentencing Commission. Once these elements are met, the Court must then consider and determine whether the § 3553(a) factors support early release. Application of the § 3553(a) factors requires an assessment of whether the relevant factors "outweigh the extraordinary and compelling reasons warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence." *Ebbers*, 432 F. Supp. 3d at 431. Those factors include, among others: (1) "the nature and circumstances of the offense and the history and

characteristics of the defendant," and (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a).

## ANALYSIS

Defendant is not entitled to a sentence reduction because she has failed to establish the existence of extraordinary and compelling reasons, and consideration of the factors set forth in 18 U.S.C. § 3553(a) does not warrant the relief requested.

The United States Sentencing Commission amended the policy statement contained in U.S.S.G. § 1B1.13, effective as of November 1, 2023, to provide guidance as to what constitutes extraordinary and compelling reasons that may warrant a sentence reduction based on compassionate release. The Sentencing Commission's policy statement provides that "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" may be an extraordinary and compelling reason warranting early release. U.S.S.G. § 1B1.13(b)(3)(C).

Defendant alleges that extraordinary and compelling reasons exist because she is the sole caregiver who "is both qualified and sufficiently available to provide round the clock, medically complex care" for her elderly, terminally ill parents. (Doc. 27 at 3, 5-9)..[6] Defendant, in support of her Motion, submitted an affidavit from her adult daughter Sonil. (Doc. 27-1). Sonil writes that Defendant's 79-year-old father is largely confined to his bed and requires assistance with almost

---

[6] Defendant also states in her Motion that she "suffers from serious medical and mental health conditions that are best managed in the community." (Doc. 27 at 10). Defendant does not argue, however, that her medical and mental health conditions constitute extraordinary and compelling reasons warranting a sentence reduction. Regardless, Defendant has not met her burden of proving that her medical and mental health conditions substantially diminish her ability to "provide self-care within the environments of a correctional facility and from which . . . she is not expected to recover," or that her conditions involve a risk of "serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(B) & (C).

all activities of daily living, including transferring, bathing, dressing, toileting, eating, transportation, and medical care. (*Id.* ¶ 5). Defendant also submitted a letter under seal from her father's physician dated November 18, 2025, stating that Defendant's father was diagnosed with Stage 2 bladder cancer, he was scheduled for surgery on December 30, 2025, and following the surgery he required postoperative care for approximately eight weeks for assistance with daily living activities, medication management and follow-up appointments. (Doc. 33). Defendant's 76-year-old mother similarly requires assistance with daily tasks, including bathing, dressing, mobility issues, managing medications, and attending medical appointments. (Doc. 27-1 ¶ 6). Most of these daily caregiver responsibilities for Defendant's parents, in Defendant's absence, are borne by Sonil. (*Id.* ¶¶ 7-17). Defendant's parents, however, also receive assistance from a home health aide who comes to their house for a few hours during the day. (*Id.* ¶ 7).

The Court is sympathetic to the health challenges experienced by Defendant's parents. Defendant's argument, however, that her parents' respective health conditions constitute extraordinary and compelling reasons supporting a sentence reduction is deficient for several reasons. Defendant has not met her burden to demonstrate her parents' incapacitation. Defendant's daughter's affidavit describing her grandparents' health condition, without corresponding medical documentation, is insufficient to establish incapacitation. *See United States v. Diaz*, 768 F. Supp. 3d 369, 376 (E.D.N.Y. 2024) (stating that the defendant's mother affidavit without supporting medical documentation was insufficient to establish her incapacitation); *United States v. Romano*, 707 F. Supp. 3d 233, 237 (E.D.N.Y. 2023) (finding the defendant did not meet his burden to show his father's incapacitation where he did "not provide any of his father's medical records or a medical note from a treating physician to establish his incapacitation").

The only medical documentation furnished by Defendant detailing her parents' medical condition was the letter from her father's physician dated November 18, 2025, stating that he was diagnosed with Stage 2 bladder cancer, he was scheduled for surgery on December 30, 2025, and following the surgery he required postoperative care for approximately eight weeks for assistance with daily living activities, medication management and follow-up appointments. The Court extended Defendant's surrender date to enable Defendant to provide her father with the eight-week postoperative care recommended by his physician. Defendant has provided no further medical documentation corroborating her parents' current medical conditions. Thus, Defendant has not met her burden to demonstrate her parents' incapacitation. Although Defendant states that "death within a short timeframe is medically likely, not speculative" for her parents, she similarly offers no medical documentation to corroborate her supposition. (Doc. 27 at 8-9).

In addition, Defendant has not met her burden to demonstrate that she is her parents' only available caregiver. Courts in this Circuit generally require evidence from several sources to establish both that family members require care and that the defendant is the sole available caregiver. *See United States v. Lindsey,* No. 13-CR-00271, 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021); *United States v. Panos,* No. 18-CR-00581, 2026 WL 221245, at *17 (S.D.N.Y. Jan. 27, 2026). Aside from her daughter's affidavit, Defendant has not provided any further evidence of her parents' current incapacitation or that she is their only available caregiver, and the Motion may be denied on this basis alone. *See Panos,* 2026 WL 221245, at *17.

To be clear, Defendant's parents have a caregiver. Defendant's daughter has assumed responsibility as her parents' caregiver even though she details the understandable challenges and physical and mental toll she has experienced due to this role. (Doc. 27-1 ¶¶ 12, 14, 20-22). Although Defendant's daughter states that she has assumed the role of caregiver because she is the

only adult child who does not work outside the home, Defendant offers no explanation why her other three children or three siblings, either alone or in combination, cannot assist with the caregiving responsibilities when the home health aide is not present. (Doc. 27-1 ¶ 20; PSR ¶¶ 41, 47). Defendant's parents, in addition, have home health aide care during the day. (Doc. 27-1 ¶ 7). Therefore, Defendant has not established that she is her parents' only available caregiver. *See United States v. Bennett*, No. 15-CR-00095, 2022 WL 3445349, at *2 (S.D.N.Y. Aug. 17, 2022) (denying compassionate release because defendant did not establish that he was his family member's only available caregiver); *United States v. Francisco-Ovalle*, No. 18-CR-00526, 2021 WL 123366, at *3 (S.D.N.Y. Jan. 13, 2021) (same); *United States v. Cajigas*, No. 08-CR-00391, 2020 WL 6625210, at *3 (S.D.N.Y. Nov. 11, 2020) ("[The defendant] has made no showing that his fiancé is unable to care for their daughter without him, and indeed she has been doing so over the past few months, albeit with difficulty."). "While external commitments of [a defendant's] family members might make caretaking difficult, that is merely the inevitable circumstance families face when a family member is incarcerated, not an extraordinary and compelling reason to reduce a sentence." *Panos*, 2026 WL 221245, at *17. Therefore, Defendant has not established extraordinary and compelling reasons for granting a reduction in sentence and such a reduction would not be "consistent with the applicable policy statement issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

Even if the Court found Defendant's application sufficient to establish extraordinary and compelling reasons, and consistent with the Sentencing Commission's policy statement, the Court's determination must then also be supported by the "factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A). This, the Court cannot do.

The Section 3553(a) factors do not support early release. These factors, such as "the nature and circumstances of the offense" and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . [and] to afford adequate deterrence to criminal conduct" weigh against her early release. 18 U.S.C. § 3553(a). "Court[s] should be wary of using [a] motion [for compassionate release] to 'correct' the sentencing court's original judgment or introduce unprincipled variance into the execution of duly-imposed sentences . . . ." *Ebbers*, 432 F. Supp. 3d at 430.

The Court imposed a sentence below the Sentencing Guidelines Range. At this time, Defendant has served less than half of that sentence. Release at this relatively early stage would not reflect the seriousness of Defendant's conduct, nor would it promote the need for deterrence. The crimes committed by this Defendant are serious, and compassionate release would undermine the goals of the original sentence here. For the reasons stated in detail at Defendant's sentencing, which the Court incorporates by reference, a sentence of eighteen months of imprisonment was necessary to achieve those goals. Moreover, Defendant has not shown any reason that the sentence imposed by the Court is no longer sound. Defendant requested a non-incarceratory sentence based in part, on her parents' health conditions and her caregiving responsibilities. (Sent. Tr. at 13-17). The sentence imposed by the Court fully accounted for the arguments Defendant now raises. At Defendant's sentencing the Court was aware of, and fully considered, Defendant's caregiving role for her parents as a mitigating factor. (Sent. Tr. at 22). The Court specifically noted that Defendant "takes care of her parents, so the family ties and responsibilities are significant." (*Id.*). Simply put, the sentence imposed on September 9, 2025 remains the appropriate sentence today.

## CONCLUSION

Accordingly, Defendant's Motion is DENIED. The Clerk of Court is respectfully directed to terminate the pending motions (Docs. 27 & 34).

**SO ORDERED:**

Dated: White Plains, New York
November 6, 2026

Philip M. Halpern
United States District Judge